In re the **MARRIAGE OF Rose Marie GERHARD and Paul Christopher Gerhard.**

**Rose Marie Gerhard, Petitioner–Respondent/ Cross–Appellant,**

v.

**Paul Christopher Gerhard, Respondent–Appellant/ Cross–Respondent.**

Nos. 22246, 22259.

Missouri Court of Appeals, Southern District, Division Two.

Jan. 25, 1999.

Motion for Rehearing or Transfer Denied Feb. 16, 1999.

Application for Transfer Denied March 23, 1999.

---

James R. Sharp, Springfield, for Appellant/Cross–Respondent.

Nancy Steffen Rahmeyer, Springfield, for Respondent/Cross–Appellant.

GARRISON, Chief Judge.

Rose Marie Gerhard ("Wife") and Paul Christopher Gerhard ("Husband") were married on May 9, 1986. The trial court dissolved the marriage pursuant to Wife's petition on February 25, 1998. Husband and Wife were awarded the joint legal custody of their three minor children with Wife being awarded the primary physical custody and Husband being allowed periods of temporary

custody including six weeks in the summer and various alternating holidays. The court found the presumed correct child support amount calculated in accordance with Civil Procedure Form No. 14, § 452.340.8, RSMo. Supp.1996, and Supreme Court Rule 88.01,[1] to be $1,267.44 per month. It also found, however, that the presumed amount was "unjust and inappropriate" and ordered Husband to pay $550 per month, retroactive, with the first payment being due on September 9, 1997. Both Husband and Wife appeal the trial court's judgment. Those appeals are consolidated and discussed together in this opinion.

■■■ In a dissolution case, the judgment of the trial court must be affirmed on appeal unless it is not supported by substantial evidence, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Hoffmann v. Hoffmann,* 676 S.W.2d 817, 822 (Mo. banc 1984); *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The appellate court defers to the trial court's determinations of credibility, viewing the evidence and permissible inferences therefrom in the light most favorable to the decree and disregarding all contrary evidence and inferences. *In re Marriage of Perkel,* 963 S.W.2d 445, 447 (Mo. App. S.D.1998). The trial judge may believe or disbelieve all, part, or none of the testimony of any witness, and the court may disbelieve testimony even when uncontradicted. *Al–Yusuf v. Al–Yusuf,* 969 S.W.2d 778, 783 (Mo.App. W.D.1998).

In Wife's sole point on appeal, she contends that the trial court abused its discretion in deviating downward from the presumed amount of child support of $1,267.44 per month to $550.00 per month because the deviation is not supported by the evidence and is against the weight of the evidence. In one of Husband's three points on appeal, he contends that the trial court erred in awarding Wife child support in the amount of $550 per month. He argues that the child support amount should have been set at $421 per month because the award is not based on

substantial evidence, is against the weight of the evidence, and constitutes an abuse of the court's discretion. In support, he argues that 1) his income is less than that found by the trial court, 2) the amount for day care costs that was factored into the presumed amount does not reflect those periods of time that Husband has the children nor any tax credits that Wife receives on said payments, and 3) the award makes no provision concerning abatement for the six-week period of time that Husband has temporary custody of the children. Because both of these points address the issue of child support, they will be discussed together.

■■■ A child support provision will be upheld unless the trial court abused its discretion or erroneously applied the law. *Allen v. Allen,* 961 S.W.2d 891, 893 (Mo.App. W.D.1998). The trial court's award of child support will not be disturbed on appeal "unless the evidence is 'palpably insufficient' to support it." *Id.* (quoting *Elliott v. Elliott,* 920 S.W.2d 570, 574 (Mo.App. W.D.1996)). Rule 88.01 establishes a rebuttable presumption that the amount of child support calculated according to Civil Procedure Form 14 is the amount of child support to be awarded. *Wallace v. Ferreira,* 830 S.W.2d 571, 573 (Mo.App. W.D.1992). To rebut the presumption, the court must enter a written or specific finding on the record that the amount so calculated is unjust or inappropriate after considering all relevant factors. *Id.* An appellate court will not substitute its judgment for that of the trial court on whether the presumed child support amount was unjust or inappropriate providing there is credible evidence to support the trial court's beliefs. *Buchanan v. Buchanan,* 828 S.W.2d 946, 949 (Mo.App. W.D.1992). An abuse of discretion will be found only where the trial court's ruling is clearly against the logic of the circumstances or is arbitrary or unreasonable. *Id.*

Wife and Husband each filed Form 14 worksheets for calculating presumed child support pursuant to Rule 88.01. Mother's Form 14 arrived at an amount of presumed

---

1. All rule references are to Missouri Rules of Civil Procedure (1998), and all statutory references are to RSMo 1994, unless otherwise stated.

child support owing from Husband of $1,267.44, based on a monthly income of $3,776.17 for her, a monthly income of $4,886.25 for Husband, $450 for Wife's monthly work-related child care costs, and $97.24 for health insurance costs for the children. Husband's Form 14 arrived at an amount owing by him of $421.29, based on a monthly income of $3776 for Wife, $1,666.67 for him, $250 per month for Wife's work-related child care costs, and $85 per month for health insurance. The trial court found that the correct figures to be utilized in calculating the presumed child support amount were the same ones utilized by Wife in her Form 14, and thus concluded that the presumed correct amount of child support owing from Husband was $1,267.44.[2]

The trial court also found the following:

" ... that after consideration of all relevant factors under § 452.340.8 and Rule 88.01, the presumed amount of child support is rebutted as being unjust and inappropriate with respect to the children's uninsured medical, dental, orthodontic, vision care, prescription drug expenses, and considering all other relevant factors; that it is in the best interests of the children that [Wife] continued [sic] to provide the parties' children with a health insurance plan her [sic] employment; that after consideration of all relevant factors under § 452.340.8, RSMo Supp.1996, and Rule 88.01, the reasonable and necessary child support amount is $550.00 per month; that should the children not have a health insurance or a plan available to [Wife], [Wife] and [Husband] shall each pay one-half of all of the reasonable and necessary medical expenses of the children, the parties each have the financial resources to contribute to the payment of the noncovered medical expenses. The Court further finds that [Husband] has contributed less than $2,000 toward the support of his children since the date of separation.[3]

In finding that the presumed amount of child support owing by Husband was rebutted as unjust and inappropriate, the trial court was not required to state the relevant factors it relied on to reach that conclusion, but the factors which caused the deviation must be apparent from the record. *Scoggins v. Timmerman,* 886 S.W.2d 135, 139 (Mo.App. W.D.1994). In that regard, our courts have said:

However, to properly frame the factual and legal issues for appeal so as to avoid needless reversals and remands, we would strongly suggest that where the trial court does "rebut" the presumed correct child support amount, it consider including in its findings why it found the amount to be unjust or inappropriate. In making such a finding, the trial court would only be articulating for the record what it is already required to do mentally by Rule 88.01.

*Woolridge v. Woolridge,* 915 S.W.2d 372, 382 (Mo.App. W.D.1996). *See also Wright v. Wright,* 975 S.W.2d 212, 213, n. 2 (Mo.App. S.D.1998). In this case, we assume that the trial court, by specifically referring to the children's uninsured medical, dental, orthodontic, vision care, and prescription drug expenses, intended to comply with the suggestions in cases such as *Woolridge* and *Wright,* and did so for the purpose of explaining its basis for deviating from the presumed correct child support amount. This conclusion is supported by the trial court's later statement in the judgment and decree in which it addressed this subject somewhat differently by stating:

... The Court has considered all relevant factors in determining child support, including all factors set forth in the revised statutes of the State of Missouri in effect on the date of the making of this Judgment and has found that the presumed amount of child support is rebutted as being unjust and inappropriate with respect to the children's uninsured medical, dental, orthodontic, vision care, and prescription drug

**2.** In making this determination, the trial court found that Wife earned a monthly gross income of $4,886.25 per month and Husband earned a monthly gross income of $3,776.17. It is clear from the record, however, that the allocation of such amounts was a clerical error and the trial

court intended to assign the $3776.17 to Wife and the $4,886.25 to Husband.

**3.** The court found that the parties separated on August 20, 1996, eighteen months prior to the entry of the dissolution decree.

expenses, in calculating the amount of such child support. The Court further orders [Wife] to provide medical insurance for the minor children through her employment should the same be available and orders that [Wife] and [Husband] shall each pay one-half of the children's uninsured medical, dental, orthodontic, vision care, and prescription drug expenses.

As we interpret the judgment and decree, the trial court intended to decrease Husband's child support payments solely because of its order that he pay one-half of the uninsured medical expenses for the children.[4]

The evidence is less than clear about the extent of those uninsured medical expenses. Wife testified that there were medical expenses for the children which were not covered, or not fully covered, by her health insurance. In support, she identified some receipts representing a total of $791 that she had paid for uninsured medical expenses for the children. Her Statement of Income and Expenses filed with the trial court listed medical expenses for the children as $200 in addition to the expense of health insurance premiums. At trial, however, Mother testified that the $200 per month might be "overestimated," but that she had excluded the cost of prescription drugs for the children from that estimate.

Even if the uninsured medical bills for the children are $200 per month, however, an order that Husband pay one-half of those expenses would amount to only $100 per month. In this case, the trial court deviated downward from the presumed amount by $717.44, a deviation of more than fifty-six percent (from $1,267.44 per month to $550). A deviation of that amount on the basis expressed by the trial court is unsupported by the evidence. Our concern, however, in reviewing a court-tried case is whether the trial court reached the proper result, not the route taken to reach that result. *Phillips v. Hoke Constr., Inc.*, 834 S.W.2d 785, 789 (Mo. App. S.D.1992). Accordingly, we will review to determine if other evidence in the record supports the deviation.

One of the errors alleged by Husband is that the trial court did not abate child support during the six weeks in the summer when the children will be with him. He argues that § 452.340.2 obligates the court to make such an abatement because Husband will have continuous custody of the children in excess of thirty consecutive days. Section 452.340.2, however, does not apply to the situation where a trial court awards extended visitation periods with the noncustodial parent. Section 452.340.2 states, in pertinent part, that "[t]he obligation of the parent ordered to make support payments shall abate, in whole or in part, for such periods of time in excess of thirty consecutive days that the other parent has voluntarily relinquished physical custody of a child to the parent ordered to pay child support, *notwithstanding any periods of visitation or temporary physical and legal or physical or legal custody pursuant to a judgment of dissolution or legal separation or any modification thereof.*" (Emphasis added.) "Section 452.340(2) relates to the circumstances regarding voluntary relinquishment of custody—not court-ordered visitation." *Lenger v. Lenger*, 939 S.W.2d 11, 14 (Mo.App. W.D.1997).

Rule 88.01(a), however, requires the court to consider *all* relevant factors when determining the correct amount of child support to order. In fact, the trial court is presumed to have considered the visitation rights ordered when determining the amount of child support to be awarded. *Lenger*, 939 S.W.2d at 14. Paragraph "D" of the Comments for Use of Form 14 provides that an adjustment from the presumed child support amount may be appropriate when children spend substantial time with both parents. Civil Procedure Forms, Form 14, Comments for Use (1998). It provides, in pertinent part:

"No specific amount of time is required for a deviation to be appropriate.... [T]he court shall consider which parent is likely to pay expenses of the child or children that are unaffected by the amount of time

---

**4.** An order to pay uninsured medical expenses is the equivalent of child support. *Short v. Short,* 947 S.W.2d 67, 70 (Mo.App. S.D.1997).

spent with each parent, such as clothing, activity fees, school, books, etc.... The mere expenditure of substantial time with both parents does not by itself negate that support be paid by one parent to the other; rather, the expenditure of substantial time with both parents is merely a factor for the court to consider in determining whether the presumed child support amount is unjust or inappropriate."

*Id.*

Even if the trial court considered such factors as Husband's extended visitation with the children in the summer in arriving at the amount of deviation from the presumed amount of child support he would owe, it is not reasonable to conclude that Wife will experience a complete exoneration from all expenses related to the children during that period. Certainly, expenditures for things such as food and entertainment for the children will cease during the time they are with Husband. Other expenses related to the support of the children, however, will continue even if the children are temporarily living with Husband for a period of six weeks, such as utilities; maintenance of a home large enough for all of them, or rent of adequate living accommodations; and the payment of health insurance premiums ordered by the trial court to be paid by Wife. Therefore, it would not be reasonable to order a complete abatement of child support during Husband's extended visitation in the summer.

This conclusion is supported by *Wallace.* In that case, the trial court failed to order the presumed child support amount in accordance with Rule 88.01 and Form No. 14. Instead of ordering the wife to pay the presumed amount, $223 per month, the trial court ordered the wife to pay no child support at all. *Id.* at 572–73. The appellate court reversed the trial court's judgment, finding that the only evidence to support a deviation from the presumed amount was the fact that the wife was to have the children two months of the summer. *Id.* at 573. The appellate court stated that while this fact

may support a deviation from the presumed amount, it certainly did not support a total elimination of child support. Accordingly, the judgment was reversed for lack of substantial evidence to support the trial court's findings and the wife was ordered to pay $223 per month in child support. *Id.*

A review of Wife's expenses indicates that approximately $660 per month was attributed by her to such things as food, recreation, laundry and barber shop for the children. If they are with Husband for six weeks, this will amount to a saving of $990. On an annual basis, this will result in a saving to Wife of $82.50 per month. Similarly, Wife's monthly child care cost of $450 per month will be relieved during the six-week period that Husband will have the children. This will result in a total annual saving of $675 or $56.25 per month.

■ Husband also claims that the trial court erred in reaching the presumed amount because it found that his annual income was $58,000 instead of $20,000. The trial court did not err in this regard, however. At trial, Wife introduced a document from Husband's employer entitled, "accounts payable paid history" which purported to show the gross payments made to Husband in the past year. She also introduced evidence that Husband's employer additionally provided him with living expenses. This evidence, if believed, constituted substantial evidence that would estimate Husband's gross income at approximately $58,000. While Husband offered testimony that his income was substantially less, the trial court was free to disbelieve Husband's evidence and believe that of Wife, *Al–Yusuf,* 969 S.W.2d at 783. We find no error in the trial court determining Husband's gross income as it did.[5]

Husband also argues that the trial court erred because there was no consideration of the tax credit that Wife would be entitled to receive for her child care expenses. The

---

5. In the argument section of his brief, Husband contends for the first time that the child support award of $550 per month was error because it failed to take into account Husband's obligations on marital debts. Appellate review, however, is restricted to issues presented in appellant's points relied on, and they alone need be considered. *In re Marriage of Caby,* 825 S.W.2d 56, 61 (Mo.App. S.D.1992). Accordingly, we decline to consider this portion of his argument.

court, however, stated in its judgment in arriving at the presumed correct amount of child support that "$450.00 per month ... less tax credit" was the figure properly used with respect to Wife's work-related child care costs in determining the Form 14 presumed child support amount. This was the same information conveyed in Wife's Form 14. We are unable to conclude that the trial court erred in this regard.

We conclude that the *extent* of the trial court's deviation from the amount of the presumed correct child support obligation of Husband is unsupported by the record and constitutes an abuse of discretion. At most, the record supports a deviation of $238.75 from the presumed amount ($100 per month for uninsured medical expenses, $82.50 for abatement of child support during Husband's extended visitation with the children in the summer, and $56.25 for savings to Wife of child care costs during Husband's summer visitation). This would result in Husband's child support obligation being $1,028.69 per month. Accordingly, we must reverse the child support award in this case and remand the case to the trial court for the entry of an amended judgment.

In another point on appeal, Husband contends that the trial court erred in awarding Wife approximately 75% of the net marital estate because it is not based on substantial evidence, is against the weight of the evidence, and constitutes an abuse of discretion. In support of his point, he contends that there was no evidence of any marital misconduct on the part of either party, Wife was earning a substantially higher income than Husband, Husband was the primary economic provider for the first seven years of the ten-year marriage, the marital debts assigned to Husband were incurred prior to the parties' most recent separation and benefited the family unit, and the evidence indicated that Husband contributed to the support of the family after the ultimate separation by making payments on marital debts and making some of the house payments.[6]

 In an action for dissolution of marriage, division of property is left to the sound discretion of the trial court, and its decision should be upheld unless the division is improper under the principles of *Murphy v. Carron* or an abuse of discretion is shown. *McKee v. McKee*, 940 S.W.2d 946, 951 (Mo. App. S.D.1997). *See also In re Marriage of VAE*, 873 S.W.2d 262, 268 (Mo.App. S.D. 1994). A trial court's division of marital property does not have to be equal; but it must be fair and equitable and take into account the factors enumerated in § 452.330.1. McKee, 940 S.W.2d at 951. *See also In re Marriage of Torix*, 863 S.W.2d 935, 938 (Mo.App. S.D.1993). Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *In re Marriage of VAE*, 873 S.W.2d at 268. If reasonable persons can differ about the propriety of the action taken by the trial court, it cannot be said that the trial court abused its discretion. *Id.* at 269.

 Section 452.330.1 provides, in pertinent part:

1. In a proceeding for dissolution of the marriage or legal separation ... the court shall set apart to each spouse such spouse's nonmarital property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective ...;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

Section 452.330.1 gives the trial court great flexibility and far-reaching power to divide

---

6. We note that according to our calculations, the trial court awarded Wife approximately 66% of the net marital assets, and not the 75% suggested by Husband.

the marital property so as to accommodate the needs of the parties upon dissolution, and there is no formula respecting the weight to be given the relevant factors which a court may consider. *Waisblum v. Waisblum,* 968 S.W.2d 753, 756 (Mo.App. W.D.1998).

■ Keeping the abovementioned principles in mind, we conclude that the trial court did not err in its division of the marital property. Substantial evidence exists to support the division made by the trial court and no abuse of discretion is found. Included in the evidence supporting the trial court's division of the marital property is the following: 1) Wife will serve as the primary custodian to the three minor children of the marriage (§ 452.330.1(5)); 2) A portion of silver was set aside to Husband as separate property in the value of $2,000 (§ 452.330.1(3)); 3) Husband's IRA ranging in value from $16,000–$40,000 was set aside as his separate property (§ 452.330.1(3)); and 4) Husband possesses a greater earning potential than Wife as he possesses more work experience and greater education including a master's degree in business administration (§ 452.330.1(1)). Husband's point is denied.

In his final point on appeal, Husband contends that the trial court erred in finding that Husband contributed less than $2,000 toward the support of the minor children since the separation and in making its child support award retroactive to September 9, 1997. Specifically, Husband contends that the court erred in not taking into account the following facts: 1) Husband made $2,877.98 in house payments on the marital home and more than $10,000 in payments on the marital debts, both of which directly benefited the children; 2) Wife did not request payment of retroactive child support in her petition nor did she pursue a motion for such payment; 3) Husband had physical custody of the children for two months during the separation.

■ The purpose of child support is to provide for the specific needs of the children. *B.S.E. v. Grant,* 971 S.W.2d 883, 885 (Mo.App. E.D.1998). A circuit court may order retroactive child support, but it is not required to do so. *Id.* It is not required that retroactive child support be specifically prayed for in the petition providing the

award is consistent with the substantive allegations of the petition, is requested on the record, and supported by the evidence. *In re Marriage of Kovach,* 873 S.W.2d 604, 607 (Mo.App. E.D.1993). The circuit court's determination as to the effective date of a child support award will not be reversed without a clear showing of an abuse of discretion. *Snell v. Snell,* 916 S.W.2d 414, 416–17 (Mo. App. W.D.1996).

■ In this case, we find no error in the trial court's award of child support retroactive to September 9, 1997. As mentioned above, it was not necessary for Wife to specifically pray for retroactive child support in her petition or pursue a motion seeking that relief. Furthermore, we note that Wife's petition for dissolution was filed on August 30, 1996. Thus, theoretically, the trial court could have ordered child support retroactive to this time. § 452.340.1; *Halupa v. Halupa,* 943 S.W.2d 272, 275 (Mo.App. E.D.1997). Husband would then owe back child support for approximately seventeen months as opposed to the five months that the trial court ordered him to pay. Husband's contributions to the previously obtained marital debts are not substitutes for the need for child support. As previously stated, child support is specifically designed to provide for the needs of the *children. B.S.E. v. Grant,* 971 S.W.2d at 885. Furthermore, while Husband claims to have made nine of the last thirty-six house payments prior to trial, the record shows that none of these payments were made after September of 1997. Also, the following occurred at trial:

[Wife's Attorney]: Did you pay any child support at all from the time you've left the marital home [either in late 1996 or January of 1997] to the present date?

Husband: I have paid for all of the children's expenses when they're with me. I have—

[Wife's Attorney]: Have you paid any child support at all to [Wife] during the entire time—

Husband: I have not written [Wife] a check, nor have I been ordered by the Court to write [Wife] a check. . . .

In light of all the relevant factors, the trial court did not err in ordering child support retroactive to September 9, 1997. Husband's final point is denied.

The portion of the judgment ordering Husband to pay child support of $550 per month is reversed and the case is remanded to the trial court with directions to enter an amended judgment ordering Husband to pay monthly child support of $1,028.69, with the first payment being due on September 9, 1997, and a like payment being due and payable on the same day of each month thereafter. The judgment is otherwise affirmed.

SHRUM, P.J., and MONTGOMERY, J., concurs.